UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ISAIAH MAYWEATHER, #311753,

        Petitioner,

Case Number 10-15005

v.

Honorable Thomas L. Ludington

LLOYD RAPELJE,

        Respondent.

_____/

**OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF
HABEAS CORPUS AND DENYING A CERTIFICATE OF APPEALABILITY
AND LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL**

Petitioner, Michigan prisoner Isaiah Mayweather, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner was convicted of first-degree felony murder, assault with intent to commit murder, armed robbery, conspiracy to commit armed robbery, felon in possession of a firearm, and two counts of possession of a firearm during the commission of a felony following a jury trial in the Macomb County Circuit Court. He was sentenced as a second habitual offender to life imprisonment without the possibility of parole on the murder conviction, concurrent terms of 35 to 65 years' imprisonment on the assault, armed robbery, and conspiracy convictions, a concurrent term of one to five years' imprisonment on the felon in possession conviction, and a consecutive term of five years' imprisonment on the felony firearm conviction in 2008. In his pleadings, he raises claims concerning the trial court's refusal to suppress identification testimony, the admission of lay opinion testimony, and the admission of impeachment testimony. The claims lack merit and are barred by procedural default; the petition

will be denied. A certificate of appealability will be denied as will leave to proceed *in forma pauperis* on appeal.

# I

Petitioner's convictions arise from his conduct during a party store robbery and shooting that occurred in Eastpointe, Michigan on September 27, 2007. He acted that evening with co-defendant Winfred Roger Phillips. The facts were set forth by the Michigan Court of Appeals, and are presumed to be correct on habeas review. *See* 28 U.S.C. § 2254(e)(1); *Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009). Those facts are as follows:

> This case arises out of a robbery and shootings at a party store on Gratiot Avenue in Eastpointe on September 27, 2007. At approximately 10:30 p.m., Mayweather entered the store, purchased some cigar wrappers, and left. At approximately 10:45 p.m., Phillips entered the store wearing a white t-shirt, jeans, and a red bandana. Phillips walked to the back, where an employee, Mohammed Al-Harbi, was working. Seconds later, Mayweather, wearing a black shirt and carrying a black backpack, re-entered the store, approached the manager, Sinan Hanna, at the counter, and asked for a bottle of vodka. Hanna requested Mayweather's identification and Mayweather refused. At the same time, Hanna heard gunshots from the back of the store. Hanna observed Phillips, armed with a gun, chasing Al-Harbi from the store's kitchen toward the office, and heard additional gunshots. Al-Harbi eventually died after having been shot 11 times. While Phillips chased Al-Harbi, Mayweather pointed a gun at Hanna, moved behind the counter with the gun and stood two or three feet from Hanna. After Hanna opened the cash register and lottery drawers, he put his hands up and Mayweather took the contents of both drawers. Next, Mayweather demanded the store's security videotapes. Security cameras recorded the incident, but Hanna told Mayweather that the store was not equipped with them. Following this rebuff, Mayweather cursed at Hanna and shot Hanna in the head. Hanna survived his suffered injuries, requiring surgery and hospitalization for several days.
>
> Following the robbery, the police released footage from the security cameras to the media. Consequently, the police received several tips identifying defendants as the perpetrators. One informant who immediately identified both defendants was Patricia Pitts. Pitts was formerly Phillips's foster mother, and had other children who are friends with Mayweather. Hanna also participated in a photographic lineup while he was recovering in the hospital. While he was unable to positively identify the person who shot him, he narrowed his choice to two photographs including Mayweather and another individual.

> On the day after the robbery, Mayweather drove his wife's Intrepid to visit his sister, Barbara Hamilton. On direct examination by the prosecution, Hamilton denied that she and Mayweather discussed the incident at the store or watched the footage. She also denied that Mayweather requested she care for his children because he planned to leave town. Following Hamilton's testimony, the prosecution called Daniel Nash, Mayweather's parole agent, and Lieutenant Leo Borowsky, who each testified, over the objection by Mayweather, that she had discussed his involvement in the incident with Mayweather and that he requested she care for his children because he was leaving town. Mayweather did, in fact, leave Michigan, and he was arrested by police, after being located through the use of global positioning data, in a Chicago train station. At the time of his arrest, Mayweather initially provided a fictitious name to an officer, but then provided his given name and stated, "I'm the one you are looking for…." The police recovered $343 in small denominations from him and recovered a dozen $5 bills and five $20 bills from his home. The police also searched Mayweather's wife's Intrepid and recovered a $71 receipt for the delivery of 7-Up to the party store by a 7-Up distributor on September 27 at 11:31 a.m., 11 hours prior to the robbery. The store owner testified that this receipt would have been in the cash register at the time of the robbery.
>
> Several days after the robbery, the police also arrested Phillips in a Grand Rapids home. In the basement of that home, the police recovered a red bandana and jeans similar to those worn by Al-Harbi's shooter.

*People v. Mayweather*, No. 288415, 2010 WL 364198, *1–2 (Mich. Ct. App. Feb. 2, 2010) (unpublished).   At the close of trial, the jury found Petitioner guilty of the charged offenses and the trial court sentenced him to the terms of imprisonment previously set forth.

Following sentencing, Petitioner filed an appeal of right with the Michigan Court of Appeals raising several claims of error, including the three claims presented on habeas review. The Michigan Court of Appeals denied relief on those claims and affirmed his convictions and sentence. *Id*. Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was denied in a standard order. *People v. Mayweather*, 788 N.W.2d 427 (2010).

Petitioner thereafter submitted his federal habeas petition, raising the following claims as grounds for relief:

> I. The trial court violated his due process rights when it refused to suppress the identification testimony of Sinan Hanna, which was the product of an unduly suggestive identification procedure and lacked support independent of the tainted process.
>
> II. The trial court violated his constitutional rights and state law by admitting opinion testimony concerning his guilt.
>
> III. The trial court violated his due process rights when it admitted impeachment evidence that had the effect of a confession in the minds of the jury.

Respondent has filed an answer to the petition contending that it should be denied because the claims lack merit and are procedurally defaulted. Petitioner has filed a reply to that answer.

## II

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), which governs this case, permits a federal court to issue the writ only if the state court decision on a federal issue "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or it amounted to "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2); *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998).

Mere error by the state court does not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins v. Smith*, 539 U.S. 510, 520–21 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000) (internal quotes omitted)). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also West v. Seabold*,

73 F.3d 81, 84 (6th Cir. 1996) ("The court gives complete deference to state court findings of historical fact unless they are clearly erroneous.").

A state court decision is "contrary to" clearly established precedent, the Supreme Court explains, "if the state court applies a rule that contradicts the governing law set forth in our cases . . . . A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent." *Williams*, 529 U.S. at 405–06.

A state court decision involves an "unreasonable application" of clearly established precedent, the Court explains, "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. The Court cautions, however, that an unreasonable application of federal law is different from an incorrect application of federal law. Unanimously emphasizing the limited nature of this review in *Harrington v. Richter*, 131 S. Ct. 770 (2011), the Court reiterated that AEDPA imposes a highly deferential standard for evaluating state-court rulings: "A state court's determination that a [petitioner's] claim lacks merit precludes habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id*. at 785–86 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011).

### III

Petitioner first asserts that he is entitled to habeas relief because the trial court failed to suppress the identification testimony of Sinan Hanna which he believes was the product of an unduly suggestive identification procedure. Respondent contends that this claim lacks merit.

Due process protects a criminal defendant against the introduction of evidence which results from an unreliable identification obtained through unnecessarily suggestive procedures. *Moore v. Illinois*, 434 U.S. 220, 227 (1977). A conviction based on identification testimony following a pre-trial identification violates due process when the pre-trial identification procedure is so "impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384 (1968). If a witness is exposed to an unduly suggestive pre-trial identification procedure, the witness's in-court identification must be suppressed unless the identification has an independent origin untainted by the suggestive pre-trial procedure. *See United States v. Wade*, 388 U.S. 218, 241 (1967).

Following Supreme Court precedent, the United States Court of Appeals for the Sixth Circuit follows a two-step analysis in determining whether an identification is admissible. *See United States v. Crozier*, 259 F.3d 503, 510 (6th Cir. 2001) (citing *Ledbetter v. Edwards*, 35 F.3d 1062, 1070 (6th Cir. 1994)). A court must first determine whether the identification procedure was suggestive. *Id.* If the court finds that the procedure was suggestive, then it must determine whether, under the totality of the circumstances, the identification was nonetheless reliable and therefore admissible. *Id.* To determine reliability, a court considers five factors: "(1) the opportunity of the witness to view the perpetrator during the crime; (2) the witness's degree of attention to the perpetrator; (3) the accuracy of the witness's prior descriptions of the perpetrator; (4) the level of certainty demonstrated by the witness when identifying the suspect; and (5) the length of time between the crime and the identification." *Id.* (citing *Neil v. Biggers*, 409 U.S. 188, 199 200 (1972)). "Against these factors is to be weighed the corrupting effect of the suggestive identification itself." *Id.* (quoting *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977)); *see also Carter v. Bell*, 218 F.3d 581, 605 (6th Cir. 2000).

A criminal defendant has the initial burden of proving that the identification procedure was impermissibly suggestive. If a defendant meets this burden, then the prosecutor must demonstrate that the identification was reliable independent of the suggestive identification procedure. *Wade*, 388 U.S. at 240 n.31; *Johnson v. Warren*, 344 F. Supp. 2d 1081, 1090 (E.D. Mich. 2004). If a defendant fails to show that the identification procedures were impermissibly suggestive, or if the totality of the circumstances indicates that the identification is otherwise reliable, no due process violation has occurred. As long as there is not a substantial misidentification, it is for the jury or fact-finder to determine the ultimate weight to be given to the identification. *United States v. Hill*, 967 F.2d 226, 230 (6th Cir. 1992); *Johnson*, 344 F. Supp. 2d at 1090.

The Michigan Court of Appeals denied relief on this claim, finding that even if the identification procedure was unduly suggestive, Sinan Hanna provided an independent basis for his identification of Petitioner at trial. The court explained in relevant part:

> An identification procedure violates a defendant's right to due process of law when it is "unnecessarily suggestive and conducive to irreparable misidentification." *People v. Williams*, 244 Mich. App. 533, 542, 624 N.W.2d 575 (2001). If a pretrial identification procedure was impermissibly suggestive, the witness's in-court identification will not be allowed unless it was based on a sufficiently independent basis to purge the taint of the improper pretrial identification. *People v. Kurylczyk*, 443 Mich. 289, 304-305, 505 N.W.2d 528 (1993).
>
> * * *
>
> In Docket No. 288415, Mayweather argues that the trial court erred when it admitted Hanna's in-court identification. Like Phillips, Mayweather maintains that the in-court identification was the product of a suggestive preliminary examination procedure, which singled him out as the likely perpetrator. He also maintains that the in-court identification lacked independent basis. We disagree. We review a trial court's decision to admit identification evidence for clear error, which "exists when the reviewing court is left with a definite and firm conviction that a mistake was made." *People v. Hornsby*, 251 Mich. App. 462, 466, 650 N.W.2d 700 (2002).

> Like the identification of Phillips, even if the pretrial identification procedure had been impermissibly suggestive in Mayweather's case, the trial court did not clearly err when it found independent bases for Hanna's in-court identification. Several facts weigh in Mayweather's favor in evaluating whether an independent basis existed, including: 1) Hanna had only narrowed his identification of his shooter in a lineup to Mayweather and an unrelated suspect, 2) Hanna told Detective Sellers he focused more on the gun than the shooter, and 3) Hanna failed to report Mayweather's scar and correct height to the police. Nevertheless, Hanna had sold cigar wrappers to Mayweather approximately 15 minutes before the robbery, and when Mayweather returned to the store, Hanna was not initially alarmed by his presence. Rather, Mayweather asked to buy liquor and Hanna requested identification. Even when Hanna heard shots being fired and Mayweather pointed a gun at Hanna, Hanna had a good opportunity to observe Mayweather because he stood next to Hanna behind the counter. In light of these competing facts and Hanna's certainty of his in-court identifications at the preliminary examination and at trial, this Court is not left with a definite and firm conviction that a mistake was made.

*Mayweather*, 2010 WL 364198 at *4, *5–*6.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. The record indicates that there was an independent basis for Sinan Hanna's in-court identification — his recollection of the incident. Although Hanna was only able to narrow his hospital photographic array identification to two individuals — one of those individuals was Petitioner. While Hanna told the police that he was focused on the gun and did not report Petitioner's scar and exact height, he was able to identify Petitioner as one of the perpetrators at the preliminary examination seven weeks after the crime. Additionally, at trial nine months later, Hanna positively identified Petitioner as one of the perpetrators of the crime based upon his memory of the incident. Hanna said that he recognized Petitioner because he had sold him cigar wrappers 15 minutes before the crime. Hanna also recalled that he requested Petitioner's identification when he returned to the store and asked to buy liquor before the robbery and shooting transpired. And during the robbery, Petitioner pointed a gun at Hanna and was in close proximity to him behind the counter. Hanna thus had multiple

opportunities to view Petitioner before and during the incident, and there is no indication that his perception was impaired. Hanna was also confident in his identification of Petitioner at trial. Thus, while the pre-trial identification procedure was not perfect, Hanna's identification of Petitioner at trial was sufficiently reliable and had an independent basis. More importantly, for purposes of habeas review, this Court cannot say that the Michigan Court of Appeals' ruling to that effect was unreasonable. Habeas relief is therefore not warranted on this claim.[1]

## IV

Petitioner's remaining two habeas claims concern the admission of impeachment testimony and lay opinion testimony at his trial. Respondent contends that these claims are barred by procedural default and otherwise lack merit.

Federal habeas relief may be precluded based on procedural default where a petitioner has not followed the state's procedural rules. *Wainwright v. Sykes*, 433 U.S. 72, 85–87 (1977); *Couch v. Jabe*, 951 F.2d 94, 96 (6th Cir. 1991). The doctrine of procedural default is applicable when a petitioner fails to comply with a state procedural rule, the rule is actually relied upon by the state courts, and the procedural rule is "adequate and independent." *White v. Mitchell*, 431 F.3d 517, 524 (6th Cir. 2006); *see also Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005); *Coleman v. Mitchell*, 244 F.3d 533, 539 (6th Cir. 2001). "A procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." *Harris v.*

---

[1] Importantly, other identification evidence was presented at trial, including the videotape of the incident, the testimony of the co-defendant's foster mother identifying Petitioner and the co-defendant on that tape, and the delivery receipt from the party store found in Petitioner's possession.

*Reed*, 489 U.S. 255, 263–64 (1989). The last *explained* state court judgment should be used to make this determination. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803–05 (1991).

The Michigan Court of Appeals rendered the last reasoned opinion on Petitioner's claims regarding the admissibility of impeachment and lay opinion testimony. In denying relief, the court relied upon Petitioner's failure to properly object at trial. *See Mayweather*, 2010 WL 364198 at *6, *9. The failure to make a contemporaneous objection is a recognized and firmly-established independent and adequate state law ground for refusing to review trial errors. *People v. Carines*, 460 Mich. 750, 763, 597 N.W.2d 130 (1999); *People v. Stanaway*, 446 Mich. 643, 687, 521 N.W.2d 557 (1994); *see also Coleman v. Thompson*, 501 U.S. 722, 750–51 (1991). The Michigan Court of Appeals denied relief on these claims based upon procedural default — Petitioner's failure to properly object at trial.

A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 753; *Gravley v. Mills*, 87 F.3d 779, 784–85 (6th Cir. 1996). To establish cause, a petitioner must demonstrate that some external impediment frustrated his ability to comply with the state's procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). A petitioner must present a substantial reason to excuse the default. *Amadeo v. Zant*, 486 U.S. 214, 223 (1988). Such reasons include interference by officials, attorney error rising to the level of ineffective assistance of counsel, or a showing that the factual or legal basis for a claim was not reasonably available. *McCleskey v. Zant*, 499 U.S. 467, 493–94 (1991).

In this case, Petitioner neither alleges nor establishes cause to excuse his failure to raise timely objections. The issue of prejudice need not be addressed when a petitioner fails to

establish cause to excuse a procedural default. *Smith v. Murray*, 477 U.S. 527, 533 (1986); *Long v. McKeen*, 722 F.2d 286, 289 (6th Cir. 1983).

Petitioner has also not shown that a fundamental miscarriage of justice occurred. The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 326–27 (1995). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 624 (1998). "To be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence — whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial." *Schlup*, 513 U.S. at 324. Petitioner makes no such showing. These claims are thus barred by procedural default, lack merit, and do not warrant habeas relief.

Finally, before Petitioner may appeal the Court's decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a federal district court denies a habeas claim on the merits, the substantial showing threshold is met if Petitioner demonstrates that reasonable jurists would find the court's assessment of the constitutional claim debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484–85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). When a federal court denies relief on procedural grounds without addressing the merits, a certificate of appealability should issue if it is shown that jurists of reason would find it debatable whether Petitioner states a valid

claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the court was correct in its procedural ruling. *Slack*, 529 U.S. at 484–85.

Petitioner has not made a substantial showing of the denial of a constitutional right as to his habeas claims, and reasonable jurists could not debate the correctness of the Court's procedural ruling. Accordingly, the Court will not grant a certificate of appealability, and Petitioner will not be granted leave to proceed *in forma pauperis* on appeal as any appeal cannot be taken in good faith. *See* Fed. R. App. P. 24(a).

## V

Accordingly, it is **ORDERED** that Petitioner's petition for writ of habeas corpus, ECF No. 1, is **DENIED** with prejudice.

It is further **ORDERED** that the Court **DECLINES** to grant a certificate of appealability or *in forma pauperis* status on appeal.

Dated: June 27, 2013                                s/Thomas L. Ludington
                                                    THOMAS L. LUDINGTON
                                                    United States District Judge

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail, and upon Isaiah Mayweather #311753 Kinross Correctional Facility 16770 S. Watertower Drive Kincheloe, MI 49788 by first class U.S. mail on June 27, 2013.

                s/Tracy A. Jacobs
                TRACY A. JACOBS

---